281 F.2d 615
 PUERTO RICO STEAMSHIP ASSOCIATION and its member companies, Bull Insular Line, Inc., et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Union de Empleados de Muelles de Puerto Rico, Local 1901, IBL-AFL-CIO, Union de Empleados de Muelles de Ponce, Sub-Local 1901, IBL-AFL-CIO, and Union de Empleados de Muelles de Mayaguez, Sub-Local 1901, IBL-AFL-CIO, Intervenors.
 No. 15474.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 31, 1960.
 Decided June 23, 1960.
 
 Mr. A. V. Cherbonnier, New York City, for petitioners. Mr. Carl K. Goodson, Washington, D. C., also entered an appearance for petitioners.
 Mr. Earle W. Putnam, Atty., National Labor Relations Board, of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of court, with whom Messrs. Dominick L. Manoli, Associate Gen. Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, and Frederick U. Reel, Atty., National Labor Relations Board, were on the brief, for respondent. Mr. Thomas J. McDermott, Associate Gen. Counsel, National Labor Relations Board, at the time the record was filed, also entered an appearance for respondent.
 Mr. Milton Horowitz, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special order of court, for intervenors. Mr. Seymour W. Miller, New York City, was on the brief for intervenors.
 Before BAZELON, BASTIAN and BURGER, Circuit Judges.
 BASTIAN, Circuit Judge.
 
 
 1
 Petitioners herein, Puerto Rico Steamship Association [Association] and its member companies, petition to review and set aside an order of the National Labor Relations Board [Board] issued December 3, 1959. The Board, in its answer, has requested enforcement of the order.
 
 
 2
 In the order appealed from, the Board held that petitioners had violated § 8(a) (1), (2) and (3) of the National Labor Relations Act, as amended, 29 U.S.C.A. §§ 151-168, in executing and maintaining contracts with the intervenors containing preferential hiring clauses. The facts are not materially in dispute.
 
 
 3
 It appears that the Association bargains collectively with the labor organizations representing the employees of its member companies. On September 30, 1956, the Association entered into a collective bargaining contract with the unions covering the cargo and freight checkers of the member companies on their docks in certain ports in Puerto Rico. This contract contained the standard union security and dues checkoff provisions, which required all employees to join the union [intervenors] thirty days after the employment date and permitted petitioners to deduct and transfer dues payable to the union under prior written authorization from their employees. However, the union shop agreement included the following additional clause:
 
 
 4
 Article II Subsection E, "the companies will give preference in employment to members of the Union, but will reserve the right to selection without discrimination for reasons of membership or nonmembership in the Union."
 
 
 5
 On October 3, 1958, a renewal contract for a three-year term expiring September 30, 1961, was executed, with the same provision in a slightly revised form. This revision reads as follows:
 
 
 6
 Article II Subsection D, "the companies will give preference in employment to members of the Union when available and qualified, but will reserve the right of selection without discrimination for reasons of membership or nonmembership in the Union."
 
 
 7
 On December 5, 1958, after the issuance of the complaint herein, the parties amended the contract to eliminate the revised clause from the renewal contract. It is contended that the record does not show that the employees were ever notified of this deletion, but the Association did provide its members with copies of the renewal contract, which were made available to new employees as required by the terms of that agreement. It is conceded that the record contains no evidence from which it could be established whether petitioners, in adherence to this clause, ever gave or refrained from giving union members any preference in employment.
 
 
 8
 On the foregoing facts, the Board found that the Association had violated the section of the Act referred to, rejecting petitioners' contention that, as the unlawful hiring clause had never been applied or enforced, its mere inclusion was not an unfair labor practice. The Board determined that petitioners' violation of § 8(a) (3) ceased on December 5, 1958, upon the deletion of the illegal provision, but held that the failure of petitioners to notify their employees of this action resulted in continuing violation of § 8(a) (1) and (2) of the Act.
 
 
 9
 The Board's order required petitioners to cease and desist (1) from the unfair labor practice found; (2) from recognizing and enforcing any contract with the union until the union demonstrated its majority in a Board-conducted election; and (3) from in any manner infringing on the rights guaranteed the employees under § 7 of the Act. The Board's order also required petitioners to reimburse all present and former employees for any initiation fees, dues, or other sums collected from them after May 6, 1958, under the 1956 and 1958 contracts, and to post the customary notice.
 
 
 10
 On this appeal, petitioners contend that the case presents at most a technical violation of the Act and that, as there was no evidence of actions conducted under the proscribed clause, the Board's order should be set aside.[1] It is claimed by petitioners that the section referred to is ambiguous, and that any seeming violation of the Act resulted largely from the translation of the Spanish language into English. However, we cannot say that the Board's determination that the inclusion of the provision in the contracts constituted a violation of the Act was improper. Cf. Local 357, Internat'l Bro. of Teamsters, etc. v. N. L. R. B., infra; N. L. R. B. v. Mountain Pacific Chapter of Associated General Contractors, et al., 9 Cir., 1959, 270 F.2d 425.
 
 
 11
 We pass then to the remedies assessed by the Board.
 
 
 12
 The Board concedes that the provision in its order requiring that initiation fees and dues be refunded is substantially that rejected by this court in Local 357, Internat'l Bro. of Teamsters, etc. v. N. L. R. B., 1960, 107 U.S.App.D.C. 188, 275 F.2d 646.[2] The Board's order will be modified to eliminate this provision.
 
 
 13
 It seems to us that the requirement of the order directing the withdrawal and withholding of recognition of the union is also unjustified. We recognize the following holding of the Supreme Court in National Labor Relations Board v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 342, 60 S.Ct. 918, 930, 84 L.Ed. 1226:
 
 
 14
 "Congress has placed the power to administer the National Labor Relations Act in the Labor Board, subject to the supervisory powers of the Courts of Appeals as the Act sets out. If the Board has acted within the compass of the power given it by Congress, has, on a charge of unfair labor practice, held a `hearing,' which the statute requires, comporting with the standards of fairness inherent in procedural due process, has made findings based upon substantial evidence and has ordered an appropriate remedy, a like obedience to the statutory law on the part of the Court of Appeals requires the court to grant enforcement of the Board's order."
 
 
 15
 However, like the United States Court of Appeals for the Third Circuit:
 
 
 16
 "We do not consider the [Supreme Court's] opinion [in Labor Board v. Bradford Dyeing Assn.], however, as holding that a court of appeals has no power to refuse to enforce a particular part of the order which it deems not reasonably calculated to effectuate the policies and purposes of the Act. This interpretation, we think, is in line with both the language and decision in the cases cited * * *." N. L. R. B. v. American Dredging Co., 3 Cir., 1960, 276 F.2d 286, 288, note 3.
 
 
 17
 Having in mind the nature of the violation, and in the absence of any proof of conduct under the clause in question, we see no rational basis for the remedy ordered by the Board. Nor do we see how it could effectuate the policies and purpose of the Act to destroy a contractual relationship which has resulted in labor peace for a number of years. There is no competing union in the picture; there are no inequities shown; and enforcement of the order would result in there being a considerable period of time while an election is being arranged and held, during which period the employees would be working without a contract and would have no bargaining representative to handle such matters as grievances. We believe that enforcement of this portion of the order would not aid in the maintenance and promotion of industrial peace and would not aid in the "healthy policy of promoting production and employment." Nor would the policies and purpose of the Act be effectuated thereby. The Board's order will be further modified to eliminate this provision. Cf. Phelps Dodge Corp v. N. L. R. B., 1941, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271; Alberty v. Federal Trade Commission, 1950, 86 U.S. App.D.C. 238, 182 F.2d 36.
 
 
 18
 The order of the Board will be modified to eliminate the above provisions relating to withdrawal of recognition of the union and the refund of dues and initiation fees, and, as so modified, will be enforced.
 
 
 19
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 Mere speculation is not sufficient to uphold a finding of an unfair labor practice. Morrison-Knudsen Co. v. N.L. R.B., 9 Cir., 1960, 276 F.2d 63, 73
 
 
 [2]
 The Board has not accepted this ruling, as it was indicated that it will seek certiorari in the Supreme Court. However, it believes that the present case should be disposed of at this time